PEOPLES GAS LIGHT & COKE COMPANY, Plaintiff-Appellee, *v.*
GEORGE F. BARRETT, Deceased, by David Bortman, his Special Adm'r, *et al.*, Defendants-Appellants—(Alice B. Fauls *et al.*, Defendants).

First District (4th Division)   No. 82—2466

Opinion filed September 15, 1983.

Leslie Robbins, of Boraz & Robbins, Ltd., of Chicago, for appellants.

Paul Heller, of Wexler & Heller, Ltd., of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

The estate of George Barrett and the deceased's sister, Avis Barrett (defendants), appeal from a summary judgment entered against them on plaintiff's third amended complaint. The judgment was for $17,759.80 owed for gas service provided by plaintiff between September 1977 and August 1978 to a 73-unit apartment building located at Lake and Waller Streets in Chicago. During that time, defendants were several of the beneficiaries of a land trust holding title to the property. On appeal, defendants raise several issues concerning whether genuine issues of material fact existed precluding summary judgment and whether computer printout records adequately established the amount owed.

The record shows that the Lake-Waller building was one of several properties placed in a trust in 1969 with the members of the Barrett family as the trust beneficiaries. The 73-unit building was located on the west side of Chicago, and over the years this building deteriorated into a slum.

Plaintiff filed suit and in the third amended complaint named George F. Barrett by his special administrator, David Bortman (George F. Barrett died during this litigation and a special administrator was appointed upon plaintiff's request), Alice B. Fauls, Avis Barrett, Thomas Barrett and Northern Illinois Industrial Properties, Inc. (NIIP), as defendants. NIIP was a real estate management firm that took over supervision of the Lake-Waller building in February 1978. The record discloses an attempt by most of the trust beneficiaries to assign their interests to NIIP, although the record also suggests that Thomas Barrett did not do so. The trustee bank eventually accepted the assignments in July 1979.

The third amended complaint had four counts. The fourth count was dismissed and the matter proceeded. Count I named George Barrett, Avis Barrett and Thomas Barrett as the owners of the Lake-Waller property and sought $12,060.64 in payments from them for gas provided between September 1977 and February 6, 1978. Count III sought payments from these defendants for gas service between February 6, 1978, and August 29, 1978, when service was terminated. The amount claimed was $5,699.16. Count II sought relief against NIIP based on the same claim as set forth in count III.

On June 9, 1981, the trial court entered a summary judgment as to liability against the estate of George Barrett and Avis Barrett on count I finding they were the owners of the Lake-Waller property

during the period in question. On August 4, 1981, the trial court entered summary judgment against the George Barrett estate and Avis Barrett establishing their liability for gas service for the time designated in count III. Summary judgment was entered in favor of NIIP on counts II and III. Finally, on October 13, 1981, damages of $17,759.80 were assessed against the estate of George Barrett and Avis Barrett.

We have originally considered this appeal (No. 81—2763). However, on September 9, 1982, we entered a Rule 23 order (87 Ill. 2d R. 23) dismissing the appeal because the record then did not show that the appeal was from a final judgment as to all the parties or that the trial court found that there was no just reason to delay enforcement or appeal of its judgment. (87 Ill. 2d R. 304(a).) On further proceedings, these matters were remedied when plaintiff's action against Alice Barrett Fauls and Thomas Barrett was voluntarily dismissed by plaintiff. Defendants and plaintiff have now resubmitted the briefs and record previously filed to stand as the briefs and record in the present case.

■ Defendants primarily argue that summary judgment was improperly entered because there were disputed questions of material fact. Defendants' first contention concerns two segments of events. First, defendants note that the gas service was installed in the building in 1976. About that time, George Barrett, a California resident, had taken over supervision of the building and several other properties owned by the Barrett family from Alice Barrett Fauls. A real estate management agent, Egbert Shirley, had day-to-day supervisory duties beginning in 1972 until George Barrett terminated him in January 1978 at the urging of NIIP. There was never a written management agreement between defendants and Shirley. Defendants now contend that a material question of fact existed whether George Barrett ever gave Shirley permission to install the gas service, thereby calling into question their liability under count I of the complaint. Second, defendants claim that under count III there was no liability against them. Defendants maintain that a material question of fact existed whether for that period of time specified in that count ownership had been transferred to NIIP or whether NIIP was merely defendants' agent.

Shirley's actions regarding the gas service are outlined in his deposition presented on the motion for summary judgment. He described the Lake-Waller property as having two stoker-fed coal, steam-heating systems. However, the use of coal created pollution violations, and it appeared that Shirley had to explain the violations in

court. In addition, in the mid-1970's the cost of coal had drastically risen and the sole Chicago coal supplier proved unreliable. Shirley indicated that he spoke to either George Barrett or Mrs. Fauls, or both, about the matter and then had the gas service installed. A letter from Shirley to George Barrett, dated November 8, 1976, explained the pollution problems and the cost of coal. This letter purportedly was written shortly after the gas service was requested as indicated by an affidavit of plaintiff's account representative. Apparently, two gas units were placed in the Lake-Waller building.

In George Barrett's deposition, this defendant stated that his gas service was installed without his consent, and he first learned of the matter in the latter part of 1977. Barrett explained that this was one reason why Shirley was discharged. He also stated that Shirley only had authority to collect rents and make ordinary expenditures. Barrett denied being advised by Shirley of the gas payments or gas bills.

Plaintiff takes the position, as the trial court did, that Shirley, as defendants' agent, could take action concerning installation of gas heat that would bind them. However, defendants assert that material issues of fact exist concerning Shirley's authority to bind them as principals.

We must reject defendants' contention. Basically, the relationship of principal and agent imposes a fiduciary obligation upon the agent. (*County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 628, 344 N.E.2d 540, 545.) A principal may be bound by his agent's actions: (1) where the principal actually authorizes his agent to act; (2) where the agent has apparent authority; and (3) where the agent exercises an inherent power stemming from the agency relationships. *Roscoe Co. v. Lewis University, College of Law* (1979), 79 Ill. App. 3d 1098, 1101, 398 N.E.2d 1083, 1086.

In the present case, we believe there existed an inherent authority for Shirley to obtain gas service for the Lake-Waller building and, consequently, defendants cannot complain that the result of his actions are binding on them. First, we note that the record contains financial summaries for the building operations from 1974 to 1976. In those years heating costs for the building were about $20,400, $26,000, and $19,300, respectively. These sums were substantial and were generated, in most part, when the fuel source was coal. In addition, there was undisputed evidence that coal produced pollution violations, was expensive, and could be provided only by an unreliable source. It seems that the bills for gas were comparable or somewhat less in comparison to coal and the natural gas was readily available. Obviously, in an attempt to maintain the building and fulfill his obliga-

tions to defendants, Shirley, as defendants' agent, discussed the question of gas conversion with them and then proceeded to obtain gas heat in order to benefit defendants and the other trust beneficiaries by continuing the building operations. We must reject defendants' assertions under the circumstances that a genuine issue of material fact existed as to Shirley's authority to procure the gas service.

■ Defendants contend that even if Shirley acted properly, they were not liable for gas service after February 1, 1978, as generally set forth in count III of the third amended complaint. In this regard, the record shows that NIIP entered the picture shortly before this time when George Barrett attempted to secure assignments of all the beneficial interests in the land trust in order to transfer title to NIIP. However, the trustee would not accept the assignments because they lacked a corporate resolution by the assignee, there remained unpaid real estate taxes, and there is some suggestion that one of the beneficiaries refused to convey his 20% beneficial interest.

The record also shows that throughout 1978 difficulties with the building were multiplying, apparently culminating in a decision by the city of Chicago to seek a court order to vacate the remaining building tenants and seek demolition of the structure. However, NIIP eventually obtained the building in 1979 when the trustee accepted the assignments.

Defendants now argue that the trial court was presented with conflicting evidence concerning a material fact whether NIIP had an ownership interest in the property and liability for gas payments during the period set forth in count III, thereby precluding entry of summary judgment against defendants.

Here, the record shows that in November 1977 counsel for NIIP wrote to George Barrett indicating that a sale of the equity in the Lake-Waller building could be effected for $3,000 subject to all unpaid taxes and building code violations. On January 4, 1978, counsel wrote to Barrett advising him that he had prepared the assignments for execution. Counsel also suggested that Shirley be discharged and NIIP's agent be appointed. One week later, George Barrett terminated Shirley. In March 1978, NIIP's counsel wrote to George Barrett indicating he would hold the assignments subject to Barrett's direction. The assignments were dated February 1, 1978. Apparently two other properties in the land trust were to be reassigned to the trust beneficiaries, but NIIP was to get the Lake-Waller building.

On April 10, 1978, NIIP's agent wrote George Barrett explaining the problems with the Lake-Waller building and how it was inhabited by many undesirable tenants. Several monthly financial statements

for that property and the two other properties in the trust accompanied this correspondence. On May 26, 1978, NIIP's counsel wrote George Barrett stating that the Lake-Waller building was unmanageable and suggesting that it be boarded up. Counsel also indicated that NIIP did not have a full beneficial interest in the property and the assignments were being returned to Barrett because the trustee would not accept them. The trust agreement provided that the trustee would not be bound by an assignment of the beneficial interest until the trustee accepted the assignment. NIIP's agent, however, would continue to operate the other trust properties for George Barrett. Several days later, George Barrett returned the assignments to NIIP's counsel and emphasized his belief that their agreement was still in effect.

We must disagree with defendants that a genuine issue of material fact existed as to whether NIIP had acquired ownership of the Lake-Waller building on February 1, 1978, when several of the beneficiaries executed assignments of their beneficial interests in the trust to NIIP. The trust agreement reposed the right to sell the property in the beneficiaries. We recognize that real estate trust beneficiaries may contract to sell the property. (*Bank of Barrington, Trust No. 11—1317 v. Oldenburg* (1981), 101 Ill. App. 3d 283, 287, 427 N.E.2d 1312, 1315; see also *Page v. Fosco* (1980), 90 Ill. App. 3d 1113, 414 N.E.2d 89; and *Lampinen v. Hicks* (1979), 73 Ill. App. 3d 376, 391 N.E.2d 1105.) However, examination of the record discloses that NIIP had not obtained ownership control of the trust properties. All the beneficiaries apparently had not joined in the assignments, and the agreement was that NIIP would reconvey two other properties in the trust back to the Barretts. This was not done during the period designated in count III. Further, the correspondence between NIIP's counsel and agent to George Barrett, which we have outlined above, clearly negates any valid basis that NIIP owned the property. Rather, the matters presented to the trial court show that NIIP acted as defendants' agent. We therefore conclude that no issue of material fact existed as to defendants' liability for count III.

Finally, defendants maintain that summary judgment was improper on the issue of damages. They maintain that plaintiff's computer printout records detailing the amount owed were improperly considered because there was an inadequate foundation as to their accuracy. Defendants argue that computer printouts are admissible if it is shown that the electronic computing equipment used is recognized as standard, that the entries were made in the regular course of business at or reasonably near the time of the happening of the event re-

corded, and that the evidence satisfies the court that the sources of information, method and time of preparation are such to indicate their trustworthiness and justify their admission.

In the present case, accuracy of the amount owed to plaintiff was based on the affidavit and interrogatories of Roy Giersch, plaintiff's special account representative. Defendants fault Giersch's conclusion pertaining to the accuracy of the printout data because he did not specify the nature of the control and supervision he exercised over defendants' account, and he did not show when the data was recorded or exactly what was meant by the records being prepared in the ordinary course of business. Finally, defendants claim that Giersch failed to show he had any knowledge of the persons who actually performed the meter readings, he made no statements regarding the nature or efficiency of the computing equipment, and he did not know who transferred the meter reading data into the computer or when it was done.

The record contains Roy Giersch's affidavit in which he averred that he has been employed by plaintiff for more than 25 years; that he is a special account representative with supervision and control of all records for the gas accounts on the Lake-Waller property; that these records were prepared and maintained in the ordinary course of business; and that the record entries were made within a reasonable time after the events occurred. His affidavit then went on to generally detail the dates gas service was requested and the amount of the delinquent accounts based on actual meter readings. In his written interrogatories, Giersch was unable to specify who actually requested gas service at the Lake-Waller building. Also, Giersch listed the dates of the meter readings but could not identify the meter reader.

After ascertaining defendants' liability, the trial court initially granted a 60-day continuance to defendants to depose Giersch before addressing the issue of damages. This occurred but his deposition is not contained in this record. Giersch was also present in court when the question of the validity of the meter readings was discussed, and plaintiff's counsel indicated that at the deposition Giersch said that every final bill was based on a meter reading. The trial court then found that Giersch's affidavit was sufficient.

In *People v. Mormon* (1981), 97 Ill. App. 3d 556, 422 N.E.2d 1065, *aff'd* (1982), 92 Ill. 2d 268, we had occasion to interpret our supreme court's decision on *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238, concerning the admissibility of computer-generated records. We noted that a proper foundation for the admissibility of such evidence is established by showing "(1) that

the electronic computing equipment is standard; (2) the entries are made in the regular course of business at or near the time of the transaction or event recorded; and (3) the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission." (*People v. Mormon* (1981), 97 Ill. App. 3d 556, 565-66.) Further, defendants never questioned the actual reliability of plaintiff's computer system. Giersch's affidavit asserted that the records were timely compiled, and, even though his deposition was taken, defendants never offered any basis to dispute this assertion. Finally, the unchallenged sources of the computer information were meter readers who examined the meters in the Lake-Waller building on specified occasions. We believe these readings, as reported on the computer printout, were sufficiently trustworthy to permit their introduction by way of a computer printout. See generally Annot., 7 A.L.R. 4th 8 (1981).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JIGANTI, JJ., concur.