ADVANCE MORTGAGE CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. CONCORDIA MUTUAL LIFE ASSOCIATION, Defendant-Appellant and Cross-Appellee.

First District (4th Division)   No. 84—2098

Opinion filed July 25, 1985.—Rehearing denied August 28, 1985.

478

Hanson & Shire, P.C., of Chicago (Robert M. Brawley, of counsel), for appellant.

Fisher & Fisher, of Chicago (Joseph J. Ticklin, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:
Plaintiff, mortgage servicer/lender, entered into a "Purchase and

Servicing Agreement" with defendant (Investor), whereby plaintiff agreed to sell to defendant certain mortgages on which plaintiff would collect all payments due and make diligent effort to cause the mortgaged premises to be insured and the taxes levied thereon to be paid in accordance with the requirements of the mortgage.

Following an assignment of a particular mortgage and a subsequent default by the mortgagor, plaintiff paid out of its own funds taxes and insurance premiums on the mortgaged premises, resulting in an escrow overdraft totalling $11,145.44. Defendant instituted foreclosure proceedings and, without consulting plaintiff, submitted its payoff letter into the closing escrow without including a demand for those advances paid by plaintiff.

Plaintiff brought an action for reimbursement of the money it had advanced for taxes and insurance premiums. The parties filed cross-motions for summary judgment, and plaintiff's motion was granted.

Defendant appeals, and plaintiff cross-appeals for prejudgment interest on the judgment in the amount of $2,230.00.

We affirm the decision of the trial court and grant prejudgment interest as requested by plaintiff in its cross-appeal.

BACKGROUND

In May 1964, plaintiff, Advance Mortgage Corporation (Advance), a mortgage servicer and lender, entered into a "Purchase and Servicing Agreement" with defendant/Investor, Concordia Mutual Life Association (Concordia). The agreement contained the following relevant provisions:

> "4(d) Advance shall make diligent effort to cause the improvements on the mortgaged premises to be insured in accordance with the requirements of each Mortgage in such amounts and in such manner as may reasonably be required by Investor; provided that Advance shall be required to pay insurance premiums only out of funds paid by the mortgagor or furnished by Investor for such purpose. ***
>
> * * *
>
> (e) Advance shall make diligent effort to cause all taxes, assessments and other charges levied against the mortgaged premises to be paid in accordance with the requirements of the mortgages; provided that Advance shall be *required* to pay such taxes, assessments or other charges only out of funds paid by the mortgagor or furnished by Investor for such purpose."

In February 1965, Advance assigned a mortgage to Concordia. The mortgage provided, in pertinent part, as follows:

"If default be made in the payment of any of the aforesaid taxes or assessments or in *** maintaining insurance and paying the premiums therefor, *** Mortgagee may, at its option, and without any obligation on its part so to do, pay said taxes and assessments, *** pay such premiums ***. All amounts expended by Mortgagee hereunder shall be secured hereby and shall be due and payable by Mortgagor to Mortgagee forthwith on demand, with interest thereon ***.

\* \* \*

Upon a foreclosure sale of said premises, *** the proceeds of such sale shall be applied in the following order:

\* \* \*

(b) To the payment of all other expenses of Mortgagee, including all moneys expended by Mortgagee and all other amounts payable by Mortgagor to Mortgagee hereunder, with interest thereon."

In January 1979, the mortgagor defaulted. Advance, despite an escrow deficit, continued to pay out of its own funds the taxes and insurance premiums on the subject property until August 1980, resulting in a total disbursement of $11,145.44.

In February 1979, Concordia informed Advance that Concordia was conducting foreclosure proceedings. In May 1979, Advance sent a letter to Concordia requesting copies of all foreclosure procedural papers be sent to Advance's office and informing Concordia of the existence of an escrow overdraft in the amount of $1,301.97. In June 1979, Concordia wrote to its attorneys, instructing them to take up the matter of the escrow overdraft with Advance. No such action was ever taken.

In September 1979, the attorneys for Concordia wrote to Advance, enclosing a copy of the foreclosure complaint and stating that it would "keep [Advance] informed as to any progress in this action." In August 1980, unbeknownst to Advance, the mortgaged property was sold under order of bankruptcy for $250,000. The proceeds of the foreclosure sale were paid into the title company's closing escrow. Concordia's attorneys, without consulting Advance, deposited into the closing escrow its payoff letter claiming a mortgage balance due of $36,567.48. The payoff letter failed to include the disbursements paid by Advance for taxes and insurance premiums over the 15-month period following the mortgagor's default. Consequently, the judgment and sale were entered without inclusion of the escrow overdraft in the amount of $11,145.44.

Advance brought suit to recover the disbursements it had paid

out. The parties filed cross-motions for summary judgment, and plaintiff's motion was granted. Concordia now appeals from the order granting Advance's motion for summary judgment, and Advance cross-appeals for prejudgment interest in the amount of $2,230.

I

OPINION

The gravamen of the instant appeal is whether plaintiff, in advancing money to pay taxes and insurance premiums on the mortgaged property, acted within the scope of its authority as a mortgage servicing agent of defendant; or whether, as defendant claims, plaintiff acted as mere volunteer under no legal obligation and consequently entitled to no reimbursement.

Initially, we note that the fact of agency is here undisputed. Plaintiff clearly, by written agreement, was functioning as the mortgage servicing agent for defendant. Thus acknowledging that an agency/principal relationship did indeed exist between the parties, we must determine the scope of that agency in order to decide whether plaintiff's act of advancing the sum in question fell therein.

Here, the agency relationship was created by express contract. In this contract, plaintiff was expressly authorized to make diligent effort to cause the mortgaged premises to be insured and to cause all taxes to be paid. Defendant contends that, under the plain language of the written contract, plaintiff was only "required" to pay insurance premiums and taxes out of funds paid by the mortgagor or furnished by defendant Concordia. The implication of this express requirement, defendant posits, is that plaintiff was not under any duty or obligation to pay insurance premiums or taxes and that, consequently, plaintiff had no authority to do so. Plaintiff, on the other hand, contends that it was acting within the scope of its agency and that the proviso on which defendant relies is a circumscription on duty but not on authority. We find merit in plaintiff's position.

■ A principal is bound not only for the precise act which he expressly authorized the agent to do, but also for whatever belongs to the doing of it or is necessary to its performance. (*St. Ann's Home For the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 402 N.E.2d 478.) A principal may be bound by his agent's actions where the principal actually authorizes his agent to act, where the agent has apparent authority, and where the agent exercises an inherent power stemming from the agency relationship. *Peoples Gas Light & Coke Co. v. Barrett* (1983), 118 Ill. App. 3d 52, 454 N.E.2d 713.

"Every general power implies every particular power reasonably necessary to its exercise or performance. Whatever matters directly appertain to, and are necessary parts of, an authorized transaction may fairly be said to be within the scope of the agency. Such necessary derivative powers are prima facie an incident to every authority, and an agent has implied authority for the performance or transaction of anything reasonably necessary to effective execution of his express authority." 2A C.J.S. *Agency* sec. 154 (1972).

The "Purchase and Servicing Agreement" entered into between the parties expressly authorized Advance, as servicing agent for Concordia, "to cause" the mortgaged premises to be insured and the taxes levied thereon to be paid. The phrasing of this provision clearly intended a good deal of discretion in the seller/servicer as to how it could "cause" the insurance premiums and taxes to be paid. While it is true that the agreement only *required* Advance to pay these charges out of funds paid either by the mortgagor or by the Investor, the principal, Concordia, never affirmatively withheld the authority or power by which Advance might choose to "cause" the insurance premiums and taxes to be paid from its own funds in the event of an escrow overdraft. Absent such affirmative contrary indication by Concordia, it was reasonable for Advance to pay the charges out of its own funds in furtherance of the goal of the agreement and as a necessary means to effectuate the act it was expressly authorized to perform.

It is undisputed that Advance was hired as a servicing agent by Concordia. The term "servicing" is, however, sufficiently ambiguous so as to make admissible evidence of custom and usage in the industry. *Carondelet Savings & Loan Association v. Citizens Savings & Loan Association* (7th Cir. 1979), 604 F.2d 464.

Such evidence was considered by the trial court in the form of an affidavit submitted by Walter C. Klein, president of Advance and executive vice president of the Lomas & Nettleton Company, the nation's largest mortgage banker. Klein stated that mortgage loan servicers generally advance their own funds to pay taxes or insurance premiums on behalf of mortgagees when mortgagors fail to pay sufficient funds into escrow. He explained that "this protects the mortgagee's security if the mortgage loan is in default." These well-alleged facts, describing the general practice of mortgage servicing companies in the mortgage banking industry, were uncontradicted by counteraffidavit. Where well-alleged facts are not contradicted by counteraffidavit, they must be taken as true, notwithstanding the existence of

contrary averments in the adverse party's pleadings. *Corpus Christi Bank & Trust Co. v. Pullano* (1979), 69 Ill. App. 3d 604, 388 N.E.2d 180.

Defendant places great reliance on *Sher v. Robin* (1972), 53 Ill. 2d 301, 291 N.E.2d 801, for the proposition that plaintiff was a "mere stranger or volunteer" to the mortgage debt it paid out of its own funds and that it cannot therefore be subrogated to the creditor's rights in respect to the security given by the real debtor. In other words, because plaintiff was a volunteer under no legal obligation to pay the insurance premiums and taxes on the mortgaged properties, plaintiff has no right to reimbursement by defendant.

Defendant's reading of the propositions set forth in *Sher* is, however, somewhat selective and taken out of context. What the *Sher* court stated is as follows:

" 'It is well settled that a mere stranger or volunteer cannot, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. But if the person who pays the debt is compelled to pay for the protection of his own interest and rights, then the substitution should be made [citation].' " 53 Ill. 2d 301, 308, 291 N.E.2d 801, 804.

The *Sher* court reiterated the definition of a "stranger" as one who is under no legal obligation or liability to pay the debt.

■ In the instant case, Advance is not, as defendant asserts, a mere stranger or volunteer under the rule set forth in *Sher*. While it is true that plaintiff paid the charges levied against the mortgaged property for the protection of Concordia's security interest, both in terms of protecting the subject property from the hazard of fire loss and in removing any lien that threatened to become a prior lien, it is also true that Advance was compelled to pay the charges for the protection of its own rights and liabilities.

Pursuant to the express duties Advance was obligated to perform under the written contract, it cannot be said that Advance, as the agent of the Investor, was under no legal duty or liability to pay the insurance premiums and taxes on the mortgaged premises. Advance was clearly obligated to "make diligent effort to cause" the premises to be insured and the taxes levied thereon to be paid. Advance faced potential liability by failing to be diligent in attempting to achieve these objectives. The discretion inherent in the obligation "to cause" the premises to be insured merely served to increase Advance's potential liability. Thus, to protect its own interest and rights under the contract, it was incumbent upon Advance to use any reasonable or

generally accepted means "to cause" the premises to be insured and the taxes to be paid. According to the uncontradicted facts adduced by affidavit, the means Advance chose were reasonable.

We therefore disagree with defendant and find that plaintiff here was not a mere stranger or volunteer but was under some legal obligation and liability to use any reasonable means not prohibited under the agreement to cause the charges levied against the mortgaged premises to be paid.

## II

■■ Alternatively, even were we to find that Advance, as agent for Concordia, acted outside its authority, Concordia retained the benefits of Advance's action such as to constitute a ratification thereof. Where an agent has acted outside the scope of his authority, a principal may ratify the act or render it obligatory upon himself, and such subsequent assent and ratification is equivalent to original authority and confirms that which originally was unauthorized. (*Reavy Grady & Crouch Realtors v. Hall* (1982), 110 Ill. App. 3d 325, 442 N.E.2d 307.) A party cannot repudiate the acts of another done on his behalf and at the same time accept the fruits and benefits of those acts. (*Corn Belt Bank v. Lincoln Savings & Loan Association* (1983), 119 Ill. App. 3d 238, 456 N.E.2d 150.) Receipt of these benefits with full knowledge of the material facts relating to the source of the benefits and the manner of acquisition, constitutes a ratification of such act unless the principal returns the benefits and repudiates the act within a reasonable time. *Buford v. Chief, Park District Police* (1960), 18 Ill. 2d 265, 164 N.E.2d 57.

In the case at bar, Concordia knew that Advance was under an express contractual obligation to make diligent effort to cause the mortgaged property to be insured and to cause any taxes levied thereon to be paid. Similarly, Concordia was aware that such charges were accruing and that, as it was informed in a letter from Advance dated May 1979, some three months after the initiation of the foreclosure proceedings, there was an escrow overdraft. The correspondence between the parties throughout the foreclosure proceedings evinces the continued viability of the contract and, necessarily, of the agency relationship. Despite its awareness of these material facts, Concordia did not consult Advance as to the money Advance had disbursed in furtherance of its contractual objective, prior to submitting the payoff letter into the closing escrow. By failing to do so, Concordia in effect knowingly retained the benefits of Advance's acts such as to constitute a ratification.

■■ ■ We therefore find that, based either on the theory of (1) authorization stemming from the express agency and the powers incidental to achieving the purposes thereof, or (2) ratification arising from the knowing retention of benefits from Advance's action, the trial court's decision awarding plaintiff by way of summary judgment $11,145.44 to repay the disbursements paid by plaintiff out of its own funds was entirely proper. We note that while the nature and extent of an agency are facts to be proved, these questions become questions of law proper for disposition by summary judgment where the evidence is not disputed. (*Wargel v. First National Bank* (1984), 121 Ill. App. 3d 730, 460 N.E.2d 331.) Because the evidence in the instant case is undisputed, the trial court's granting of plaintiff's motion for summary judgment was appropriate.

### III

On cross-appeal, plaintiff maintains that the trial court erred in denying its request for prejudgment interest to which it claims entitlement under section 2 of the Interest Act. (Ill. Rev. Stat. 1983, ch. 17, par. 6402.) Section 2 reads, in pertinent part, as follows:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; *on money lent or advanced for the use of another* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 17, par. 6402.

■ Absent an express agreement between the parties, an allowance of prejudgment interest is permitted by statute if the amount due is fixed or easily computed. (*Cushman & Wakefield of Illinois, Inc. v. Northbrook 500 Ltd. Partnership* (1983), 112 Ill. App. 3d 951, 445 N.E.2d 1313.) Prejudgment interest will be granted although a good-faith defense exists and even where the claimed right and the amount due require legal ascertainment. (*La Grange Metal Products v. Pettibone Mulliken Corp.* (1982), 106 Ill. App. 3d 1046, 436 N.E.2d 645.) The amount must be due in the sense that a debtor-creditor relationship has come into being. *Kansas Quality Construction, Inc. v. Chiasson* (1969), 112 Ill. App. 2d 277, 250 N.E.2d 785.

■ Here, the amount due is fixed at that rate set forth on the sheet showing plaintiff's itemized foreclosure advances, totalling the exact sum of $11,145.44. Plaintiff's payment of these charges brought into being the existence of a debtor-creditor relationship between the parties. Thus, the requisites for the award of prejudgment interest have been met, and plaintiff is entitled to its requested interest at the rate of 5% per annum from and after August 25, 1980, the date on

which the sum was subject to exact computation and was due, to the date of the judgment.

For all the reasons set forth above, we affirm the decision of the trial court, awarding plaintiff judgment in the sum of $11,145.44, and modify the award to include prejudgment interest in the amount of $2,230, resulting in a total judgment for $13,375.44.

Affirmed and modified.

JIGANTI, P.J., and JOHNSON, J., concur.