ROGER OWENS, Plaintiff, v. MIDWEST TANK AND MANUFACTURING COMPANY *et al.*, Defendants (Midwest Tank and Manufacturing Company, Third–Party Plaintiff-Appellant; Tyrolt, Inc., d/b/a Dunn Company, Third–Party Defendant-Appellee).

First District (4th Division)   No. 1—88—3482

Opinion filed December 28, 1989.

McDermott, Will & Emery, of Chicago (Donald C. Clark, Jr., and Luke DeGrand, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (David H. Levitt and Nancy G. Lischer, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Roger Owens, filed a product liability action against the defendant Midwest Tank and Manufacturing Company (Midwest) alleging that he was injured as a result of a defective asphalt storage silo manufactured by Midwest. Midwest then filed a third-party complaint against the plaintiff's employer, Tyrolt, Inc., d/b/a Dunn Company (Dunn). Count I of the third-party complaint sought indemnity pursuant to a contractual provision which required Dunn to indemnify Midwest for any injury resulting in whole or in part from an unauthorized modification or misuse of the silo. The trial court granted Dunn's motion to dismiss count I for failure to state a cause of action for indemnity. Following the parties' settlement of the remaining claims, Midwest has appealed the dismissal of its indemnity count. Midwest contends on appeal that the indemnity provision is sufficiently clear and specific to be enforceable, that it is not illusory and that enforcement of the provision would not violate public policy.

The complaint filed by the plaintiff against Midwest alleged that Midwest "designed, manufactured, sold and installed" an asphalt storage silo. During the course of his employment with Dunn, the plaintiff was cleaning the interior of the silo and was injured when the doors at the bottom of the silo closed upon him. The complaint alleged that the silo was in the same condition as at the time of its manufacture and that it was unreasonably dangerous in four respects: (1) there

was no control mechanism at the bottom of the silo or near the silo doors by which the doors could be opened; (2) there was no method to shut down the hydraulic system for the doors without turning off the entire system; (3) the only way to open the doors was to have a person in a booth depress a button; and (4) it was foreseeable that asphalt would become lodged between certain beams in the silo and that workmen would go between the silo doors to dislodge it.

Midwest filed a two-count third-party complaint against Dunn. Count II was for contribution and is not a subject of this appeal. Count I was for express indemnity based upon a contractual provision contained in the detail specifications for the asphalt production plant manufactured by Midwest and sold to Dunn. The language of the provision is as follows:

"The Customer [Dunn] agrees that if any damage or injury (including death) to person or property (including the loss or use thereof) results in whole or in part from a modification or alteration of the equipment purchased from the Company [Midwest] which is made without the Company's written approval or consent or which results from improper or abnormal operation of such equipment without the company's written approval or consent, then in any such event the Customer will indemnify and save the Company harmless from all liability, cost and expense (including costs of litigation and defense) for which the Company may be held liable in connection with such damage or injury."

Midwest's complaint then alleged that the plaintiff's injuries resulted in whole or in part from either a modification or alteration or from improper or abnormal operation of the asphalt production plant and that Dunn was accordingly required to indemnify Midwest from any liability resulting from the plaintiff's strict liability action.

Dunn filed a motion to dismiss the third-party complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). With respect to count I, the motion to dismiss alleged that the language of the indemnity agreement was ambiguous and therefore insufficient to require indemnity where Midwest was sued for strict product liability. The motion also alleged that Midwest could not state a claim for indemnity based on allegations of modification or misuse, because if the allegations were proved true, Midwest could not be held liable and there would be no basis for indemnity. The court granted the motion to dismiss, and Midwest has appealed, contending that the allegations of its third-party complaint against Dunn sufficiently set forth a cause of action for indemnity.

■■ ■ Midwest's complaint should not have been dismissed unless it clearly appeared from the pleadings that no set of facts could have been proved which would have entitled Midwest to relief. (*Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 98, 398 N.E.2d 313.) The issue before us involves interpretation of a written contract provision, which is a question of law subject to *de novo* review by this court. *Kerr Steamship Co. v. Chicago Title & Trust Co.* (1983), 120 Ill. App. 3d 998, 1007, 458 N.E.2d 1009.

Dunn's motion to dismiss challenged the indemnity provision on two bases. First, Dunn alleged that the provision was not sufficiently specific to be construed as an agreement to indemnify Midwest against its own strict liability. Second, Dunn alleged that the provision was illusory because it called for indemnity only where the product was modified or misused; however, because modification and misuse are defenses to a product liability action, proof of Midwest's allegations would result in no liability to the plaintiff and there would be no need for indemnity.

With regard to the argument involving lack of specificity, the Illinois Supreme Court in *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, set forth the principles applicable to indemnity agreements. The court held, in the context of a negligence action, that agreements to indemnify a party against liability arising from its actions are disfavored and must be strictly construed against a party seeking indemnity. In construing such agreements the meaning and intent of the parties must be determined from the words of the agreement; phrases or terms will not be added to reach a more equitable result. *Westinghouse*, 395 Ill. at 432.

■ The same rules of construction apply to indemnity agreements in product liability cases. An agreement will not be construed as indemnifying a party against its own strict liability unless the language of the agreement clearly and specifically shows that this was the intent of the parties. (*Smith v. Clark Equipment Co.* (1985), 136 Ill. App. 3d 800, 805, 483 N.E.2d 1006; *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 98, 398 N.E.2d 313; *Sorrentino v. Waco Scaffolding & Shoring Co.* (1976), 44 Ill. App. 3d 1055, 1058, 358 N.E.2d 1244.) In construing an agreement to indemnify, the language and provisions must be considered as a whole. *Smith v. Clark Equipment Co.*, 136 Ill. App. 3d at 805.

Midwest relies heavily upon *Patton v. T.O.F.C., Inc.* (1979), 79 Ill. App. 3d 94, 398 N.E.2d 313, to support its argument that the indemnity provision in the case at bar is sufficiently clear and specific to be enforceable. In *Patton*, the injured plaintiff was an employee of

T.O.F.C., which had leased certain equipment from the Erie Lackawanna Railway Company (Erie). The plaintiff filed a product liability action against Erie, alleging that his injury was caused by the defective condition of the equipment. Erie then filed a declaratory judgment action against T.O.F.C., seeking a declaration that T.O.F.C. was contractually required to defend and indemnify Erie. The indemnity provision in *Patton* stated that T.O.F.C. was obligated to indemnify Erie from:

> " '[A]ny and all claims, losses, liabilities, demands, suits, judgments, or causes of action and all legal proceedings *** *which may be attributable to any defect in the Equipment arising from the material or any article used therein or from the design, testing or use thereof or from any maintenance, service, repair, overhaul, or testing of the Equipment, regardless of when such defect shall be discovered ***.' "* (Emphasis in original.) (*Patton*, 79 Ill. App. 3d at 99, 398 N.E.2d at 317.)

T.O.F.C. contended, as does Dunn in the instant cause, that the language of the provision was not specific enough to require indemnity because the term "strict liability" was not mentioned. The court rejected this argument, finding that inclusion of the term "defect," which is an essential element of proof in a product liability action, was sufficient to establish that the parties intended the provision to apply to product liability actions. The court stated:

> "We cannot believe that this similarity between the essential allegation of a strict products liability action and [the provision's] requirement that Erie be indemnified for liability for injuries attributable to a 'defect' in the [equipment] is mere coincidence. We think it was the clear intent of the parties *** that Erie be indemnified by [T.O.F.C.] for any liability which might arise from a strict products liability claim ***." *Patton*, 79 Ill. App. 3d at 99, 398 N.E.2d at 317.

Applying the reasoning of the *Patton* decision, Midwest points out that the indemnification provision in the instant cause applies only where the injury is caused in whole or in part by a modification or misuse of the silo. Because a plaintiff in a strict liability claim must prove that the defect in the product existed at the time it left the manufacturer's control, a third party's modification of the product may defeat the manufacturer's liability. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) Also, misuse of a product may bar recovery in a strict product liability action. (*King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 513 N.E.2d 958.) Midwest argues that since "modification" and "misuse"

are terms particular to product liability actions, inclusion of those terms in the indemnity provision evinces an intent by the parties that the provision would apply to product liability claims.

■ We agree with this argument. Although indemnity provisions are disfavored and must be strictly construed, they are not illegal. Where the intent of the parties to indemnify is clear and unambiguous, it should be given effect. (*Higgins v. Kleronomos* (1984), 121 Ill. App. 3d 316, 319, 459 N.E.2d 1048.) It is our interpretation that the indemnity provision here specifically provides for indemnity when an injury caused by a modification or misuse of the product gives rise to a strict liability claim against Midwest. As in *Patton*, we believe that the parties' reference to concepts particular to product liability actions establishes that it was their intent to provide for indemnification in the context of product liability claims.

Dunn's motion to dismiss also attacked Midwest's claim for indemnity on the grounds that the indemnity provision was illusory. Dunn maintains that the provision calls for indemnity only in cases where the product was modified or misused; yet proof of such modification or misuse would be a successful defense to a product liability claim and there would therefore be no need for indemnity. In support of this argument, Dunn cites the supreme court decision in *Burke v. Sky Climber, Inc.* (1974), 57 Ill. 2d 542, 316 N.E.2d 516, and its subsequent decision in *Heinrich v. Peabody International Corp.* (1987), 117 Ill. 2d 162, 510 N.E.2d 889.

*Burke* and *Heinrich* both held that where the allegations of the indemnification complaint, if proven, would render the indemnitee not liable to the plaintiff, no cause of action for indemnity could be stated. However, those cases involved actions for implied indemnity based upon an active/passive theory of negligence. To recover under a theory of implied indemnity based on active/passive negligence, the party seeking indemnity had to show that the indemnitor's conduct was the sole cause of the plaintiff's injuries and that the indemnitee was only technically at fault. (*Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 255, 527 N.E.2d 1248.) The court in *Burke* and *Heinrich* recognized that if in fact the indemnitor's conduct constituted the sole proximate cause of the injury, no liability would exist on the part of the indemnitee and indemnity would not be needed.

■■ ■ In contrast to the negligence cases cited by Dunn, a plaintiff seeking to recover from a manufacturer on the basis of strict liability need only prove that the condition of the product was "a" proximate cause of the injury. (*King v. American Food Equipment Co.* (1987), 160 Ill. App. 3d 898, 914, 513 N.E.2d 958.) Thus, even if the

allegations of modification or misuse were proved, Midwest would remain liable to the plaintiff if a defect in the equipment contributed to the injury or if Dunn's modification or misuse was foreseeable by Midwest. (See *King*, 160 Ill. App. 3d 898, 513 N.E.2d 958.) The indemnity provision between Dunn and Midwest addresses this situation by providing for indemnity where a modification or misuse of the product is "in whole or in part" a cause of the injury. Because there are situations in which Midwest's liability can exist simultaneously with Dunn's indemnity obligation, we must reject Dunn's contention that the indemnity agreement is illusory.

■ Finally, Dunn contends that the indemnity provision violates public policy because it allows Midwest to seek downstream indemnification. Dunn argues that the provision would allow Midwest to avoid responsibility for manufacturing defective equipment and remove the incentive to produce a safer product. No authority is cited in support of this argument, and we are not persuaded by it. We do not believe that it is violative of public policy for members of the distributive chain to freely bargain with respect to the ultimate apportionment of liability as long as the injured party's right to compensation is not jeopardized. As stated in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 14, 374 N.E.2d 437, 443:

> "The public policy considerations which motivated the adoption of strict liability (see *Suvada v. White Motor Co.*, 32 Ill. 2d 612[, 210 N.E.2d 182]) were that the economic loss suffered by the user should be imposed on the one who created the risk and reaped the profit, including everyone from the manufacturer on through to the seller or any one of them. When the economic loss of the user has been imposed on a defendant in a strict liability action the policy considerations of *Suvada* are satisfied and the ordinary equitable principles governing the concepts of indemnity or contribution are to be applied."

Consistent with the rationale of *Skinner*, we do not believe that public policy prohibits downstream actions for indemnity.

For the foregoing reasons, we believe that the trial court erred in dismissing Midwest's claim for indemnity against Dunn. Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

LINN and McMORROW, JJ., concur.