Sandra J. SORENSON, Administratrix of the Estate of Frank L. Sorenson, Deceased, Appellant–Plaintiff,

v.

ALLIED PRODUCTS CORPORATION, Appellee–Defendant.

No. 04A03–9802–CV–49.

Court of Appeals of Indiana.

March 10, 1999.

Donald H. Wray, David A. Temple, Stewart & Irwin, Robert C. Rupp, Indianapolis, Indiana, Attorneys for Appellant.

John M. Stuckey, Stuart & Branigin, Lafayette, Indiana, George Vernon, Chicago, Illinois, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff Sandra J. Sorenson (Sandra), as the widow and Administratrix of the estate of Frank L. Sorenson (Sorenson), appeals the trial court order granting summary judgment in favor of Allied Products Corporation (Allied) on the issue of causation and successor liability. We affirm.

### ISSUES

Sandra raises two issues for our review which we restate as:

1. Whether the trial court exceeded its jurisdictional power by granting summary judgment in favor of Allied.

2. Whether Allied can be held liable for Sorenson's death as a successor of White Farm's liability.

### FACTS AND PROCEDURAL HISTORY

Sorenson was employed as a mechanic by Fowler Oliver Sales, Inc. (Fowler) from 1964–1971 and 1977–1993, where he replaced worn out brake assemblies and clutch disks containing asbestos. The brake assemblies and clutch disks were used in Oliver brand and White Farm Equipment Company (White Farm) brand tractors and combines. The Oliver brand name was discontinued sometime after Oliver was purchased by White Farm in the 1960s. Thereafter, Fowler was a White Farm dealership of new equipment sales, but continued to provide service and maintenance on the discontinued Oliver product line as well as the White Farm product line.

In 1985, White Farm was placed in involuntary bankruptcy by its creditors. On October 9, 1985, Allied entered into an Asset Purchase Agreement (Agreement) with White Farm to purchase White Farm assets related to the manufacturing of tractors, planters and tillage equipment. The Agreement provided that Allied would purchase reorganization assets valued at $63,194,000. Excluded assets included a cash account in the amount of $4,600,000, certain receivables in the amount of $6,129,000, certain inventory, and White Farm's interest in certain real estate. In exchange for the transfer of reorganization assets, Allied agreed to issue and deliver to White Farm 340,000 shares of a new series of preferred stock. The Agreement specifically provided that:

> Allied shall not assume or in any way become liable for, any claims, liabilities or obligations or any kind or nature, whether accrued, absolute, contingent or otherwise, or whether due or to become due or otherwise arising out of the events or transactions of facts which shall have occurred prior to the final closing date except as expressly assumed by Allied . . .

(R. 61–62).

On October 31, 1985, the bankruptcy court ruled that White Farm was authorized to immediately consummate the acquisition agreement with Allied and that the reorganization assets shall immediately be transferred to Allied free and clear of all liens, claims and encumbrances. On November 11, 1987, the bankruptcy court confirmed a plan of reorganization between the official committee of unsecured creditors of White Farm and Borg–Warner Acceptance Corporation. In 1986, Allied entered into new dealer contracts with a number of White Farm dealers, including Fowler. Allied also began selling replacement brakes and clutches to dealers of old Oliver and White Farm brand tractors and combines.

Sorenson became sick in late 1993 and died on April 24, 1994 of mesothelioma from asbestos exposure. The doctor that diagnosed Sorenson with mesothelioma stated that the latency period for the effects of asbestos exposure is thirty to fifty years. Thus, he concluded that Sorenson must have been exposed to asbestos prior to 1986, when Allied attained White Farm's assets. Sandra brought a claim against Allied alleging that Allied supplied the brakes and clutches that Sorenson inspected, serviced and repaired, and from which he was exposed to asbestos while an employee at Fowler. The trial court granted Allied's motion for summary judgment on January 8, 1998, finding that:

1) Allied purchased White Farm during a pending bankruptcy and not for the purpose of avoiding liabilities that existed or potentially existed.

2) From a policy perspective, it would be poor judgment to hold Allied liable for tortious wrong doings, if any, by White Farm, occurring many years prior to the purchase of White Farm's assets.

3) There has been no sufficient exception shown to overcome the general rule that a purchaser of assets is not liable for prior actions of a selling corporation.

4) It was not the intent of White Farm and Allied that Allied assume the type of liability involved in this case.

5) There were no sufficient indicators or criteria in which to determine that the "doctrine of merger" or the "continuation of the business" exceptions existed to justify finding successor liability against Allied.

(R. 356).

Sandra now brings this appeal.

## DISCUSSION AND DECISION

### I. Jurisdiction

Sandra argues that the trial court exceeded its jurisdictional power by granting summary judgment in favor of Allied. Specifically, she claims that the bankruptcy court, not the trial court had the power to sell White Farm's assets. However, Sandra concedes that Sorenson's claims are not bankruptcy claims capable of being dismissed or discharged by the bankruptcy court and that

the October 31, 1985 bankruptcy court order authorizing the sale of White Farm's assets did not discharge or affect Sorenson's claims.

■ Sandra mistakenly argues that this case involves the bankruptcy court discharging Sorenson's claim. The present claim is a post-sale tort that does not deal in any way with the bankruptcy sale. In a United States Court of Appeals case in the 7th Circuit, cited and analyzed by Sandra, the court held that a bankruptcy court cannot enjoin successor liability lawsuits arising out of injuries which occurred post-confirmation. *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–63 (7th Cir.1994). Therefore, the bankruptcy court has neither the power to discharge Sorenson's claim nor the power to enjoin a successor liability claim because this is a successor liability tort claim having nothing to do with White Farm's bankruptcy.

### II. Successor Liability

Sandra argues that the trial court erred in finding as a matter of law that Allied could not be held liable as the successor of White Farm. Specifically, Sandra claims that the transaction between Allied and White Farm amounted to a de facto merger. We disagree.

■ Where one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind.1994). Generally recognized exceptions to this rule include (1) an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets done for the purpose of escaping liability; (3) a purchase that is a de facto consolidation or merger; or (4) instances where the purchase is a mere continuation of the seller. *Id.* Further, a successor's liability, under these exceptions, takes place only when the predecessor corporation no longer exists, such as when a corporation dissolves or liquidates in bankruptcy. *Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385, 387 (Ind.Ct.App.1991).

Sandra argues that the facts of this case meet the third or fourth exception set forth in *Winkler*. In *Hernandez v. Johnson Press Corporation*, the Illinois Court of Appeals

applied Indiana law and stated the criteria for establishing a de facto merger as: (1) continuity of ownership; (2) continuity of management, personnel, and physical operation; (3) cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; and (4) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor. 70 Ill.App.3d 664, 26 Ill.Dec. 777, 388 N.E.2d 778, 780 (1979). The 7th Circuit found that a major factor in support of a finding of de facto merger is a transfer of stock as consideration, stating that "[t]he question of whether cash or stock is given in consideration for the assets is really a question of ownership." *Travis v. Harris Corp.,* 565 F.2d 443, 447 (7th Cir.1977).

■ The continuity of ownership factor raises the issue of whether shareholders of the predecessor corporation become shareholders of the successor corporation at the time the assets were sold. It is undisputed that the Agreement provided that Allied was to issue transfer stock to White Farm in exchange for the assets. However, the Agreement and the bankruptcy court only allowed that stock to be distributed to White Farm's secured creditors. Thus, White Farm's shareholders never held any stock in Allied. Since the White Farm shareholders never had possession of the Allied shares, they never possessed the authority to participate fully in the management function of Allied. Therefore, the White Farm shareholders never exerted ownership over Allied.

Another factor in determining the existence of a de facto merger is the continuity of management, personnel, and physical location. It is clear that Allied did not hire any of White Farm's directors or officers and, thus, there was no continuity of upper-tier management. Although one White Farm officer became a management employee of Allied for two years, the mere fact that one officer of the predecessor corporation had been employed by the purchasing corporation is insufficient to render the purchaser liable absent continuity of stockholders or directors. *See Travis,* 565 F.2d 443.

Additionally, the White Farm shareholders never dissolved that corporation. Thus, two entities remain in the marketplace because White Farm did not cease operations and dissolve as soon as possible. Allied also cannot be said to have assumed White Farm's normal ongoing business liabilities. Allied terminated White Farm's dealer contracts and labor agreements. Allied also subsumed all of White Farm's accounting, legal and personnel functions at its headquarters. Allied did not purchase an ongoing business with a sales force and business contracts. In fact, Allied hired less than 30% of White Farm's employees.

■ We now turn to a discussion of the fourth exception set forth in *Winkler*. The test for a mere continuation of the sellers business is not the continuation of the business operation, but rather the continuation of the corporate entity. An indication that the corporate entity has been continued is a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer. *Travis,* 565 F.2d at 447.

■ As previously mentioned, Allied did not retain any of White Farm's directors and White Farm's shareholders never held any stock in Allied. In addition, White Farm's shareholders never dissolved the corporation so two corporations remained at the completion of the transfer. As such, Allied's purchase of White Farm did not qualify as a mere continuation of the seller's business.

In the present case, there are no facts to support application of either the "de facto merger" or the "mere continuation" exception and no basis exists to impose successorship liability.

### CONCLUSION

The trial court did not exceed its jurisdictional power by granting summary judgment in favor of Allied.

Affirmed.

STATON, J., and BROOK, J., concur.