**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANTS PRO-SE:

**CHERYL E. WEBB**
**G. CAMERON TAYLOR**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**PHILLIP A. NORMAN**
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CHERYL E. WEBB F/K/A CHERYL E. WILDER )
and G. CAMERON TAYLOR, )
                                           )
        Appellants-Respondents. )
                                           )
            vs.                         )      No. 49A02-1112-MF-1142
                                           )
THE BANK OF NEW YORK MELLON, )
                                           )
        Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David J. Dreyer, Judge
Cause No. 49D10-1006-MF-24241

**October 29, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellants-respondents Cheryl E. Webb, formerly Cheryl E. Wilder, and G. Cameron Taylor (collectively, "the Appellants") appeal the trial court's order denying their motion for summary judgment and granting summary judgment in favor of appellee-petitioner, The Bank of New York Mellon (Bank of New York). More particularly, the Appellants argue that the Bank of New York failed to show that it was the proper holder of the promissory note and assignee of the mortgage and that, consequently, foreclosure was improper. Finding no reversible error, we affirm and remand with instructions.

FACTS

On July 28, 1995, Dennis Wilder and Cheryl Webb[1] executed a promissory note promising to pay M/I Financial Corporation (M/I Financial) $161,134. The interest rate on this note was 7.5%. This promissory note was secured by a mortgage on real property located in Marion County. M/I Financial endorsed the promissory note and mortgage to Countrywide Funding Corporation (Countrywide Funding) that same day. Although the reason is somewhat unclear, that same day, Cheryl signed an amended and restated note, promising to pay Countrywide Home Loans, Inc. (Countrywide Home Loans) $170,396.56 plus 7% interest.

On September 2, 2003, Cheryl and Countrywide Home Loans executed a loan modification agreement, modifying the mortgage that she had executed on July 28, 1995. Specifically, the September 2 modification stated that Cheryl owed the lender

---

[1] Dennis and Cheryl were married; however, on October 11, 2000, their marriage was dissolved, and Cheryl was awarded the marital residence, which is the real property securing the loan at issue. Appellee's App. p. 152. At some point, Cheryl married G. Cameron Taylor, the second-named Appellant.

2

$170,396.56 rather than $161,134 as stated in the original mortgage. On October 1, 2008, Cheryl defaulted on making payments under the terms of the note and mortgage.

At some point, Countrywide Home Loans executed a note allonge with a blank endorsement on Cheryl's promissory note. See Black's Law Dictionary 76 (7th ed. 1999) (defining an "allonge" as a paper "attached to a negotiable instrument for the purpose of receiving further indorsements when the original is filled"). The note allonge appears to refer to the same loan as the amended and restated promissory note.[2] However, the note allonge stated the loan amount is for $161,134, while the amended and restated promissory note stated that the loan is for $170,396.56. The Bank of New York is now the holder of the amended and restated note and of the note allonge. On January 13, 2010, two years after Cheryl defaulted, Countrywide Funding executed an assignment of the mortgage, transferring its interest in the mortgage to the Bank of New York.

On May 26, 2010, the Bank of New York initiated foreclosure proceedings. On October 12, 2010, the Bank of New York filed a motion for summary judgment. In support of its motion, the Bank of New York designated the complaint, the affidavit of debt, and the affidavit of attorney fees. The trial court denied the motion without a hearing on December 3, 2010.

On January 12, 2011, the Bank of New York filed an amended complaint for foreclosure. On January 25 and February 18, 2011, the Bank of New York responded to the Appellants' first request for the production of documents.

---

[2] Specifically, the note allonge refers to loan number 4941358 and the amended and restated promissory note refers to number 065<u>4941358</u>7105B. Appellee's App. p. 526, 529 (emphasis added).

3

On April 30, 2011, the Appellants filed a motion for summary judgment. Although the Appellants did not designate anything in support of their motion, they made reference to the Bank of New York's response to the first request for the production of documents. In their motion, the Appellants argued that the Bank of New York did not have a legal interest in the note and mortgage at the time the foreclosure proceedings were initiated.

On August 29, 2011, the Bank of New York served its response to the Appellants' second request for the production of documents. The response stated, in part, that the original documents were in the possession of the Bank of New York's attorney and that the Appellants could contact the attorney to schedule a time to inspect them.

On August 31, 2011, pursuant to Indiana Trial Rule 56(B), the Bank of New York filed a cross-motion of summary judgment. In its cross-motion, the Bank of New York designated the complaint with amendments, the affidavit of debt, the affidavit in support of attorney fees, its response to the Appellants' counterclaim, the second request for the production of documents, and the affidavit of the original note, mortgage, and title research which was not filed in the Bank of New York's first motion for summary judgment.

The trial court heard arguments on both motions on November 4, 2011. On November 30, 2011, the trial court granted the Bank of New York's cross-motion for summary judgment and denied the Appellants' motion for summary judgment. The Appellants now appeal.

4

## DISCUSSION AND DECISION

The Appellants argue that the Bank of New York's cross-motion for summary judgment was improper because it failed to prove that the promissory note and mortgage had been properly assigned to it. The Appellants argue that for this reason, their motion for summary judgment should have been granted.

When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court, namely, summary judgment should be granted only if the designated evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Scribner v. Gibbs, 953 N.E.2d 475, 479 (Ind. Ct. App. 2011); see also Ind. Trial Rule 56(C). Additionally, we must construe all factual inferences in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party. Scribner, 953 N.E.2d at 479.

Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact, the party opposing summary judgment must respond by designating specific evidence establishing a genuine issue of material fact. Hays v. Harmon, 809 N.E.2d 460, 464 (Ind. Ct. App. 2004). The fact that the parties filed cross-motions for summary judgment does not alter the standard of review on appeal. Deckler v. Zengler, 883 N.E.2d 839, 842 (Ind. Ct. App. 2008).

Indiana has adopted Article 3 of the Uniform Commercial Code (UCC), which governs negotiable instruments, and it is well-established that a promissory note secured

5

by a mortgage is a negotiable instrument. First Valley Bank v. First Sav. & Loan Ass'n of Cent. Ind., 412 N.E.2d 1237, 1240-41 (Ind. Ct. App. 1980). Indeed, mortgage notes were considered negotiable instruments before the adoption of the UCC. Id.

Indiana Code section 26-1-3.1-301 provides that a negotiable instrument may be enforced by "the holder of the instrument." The term "holder" includes the person in possession of a negotiable instrument that is payable to "bearer" or a person in possession of a negotiable instrument "payable to bearer or endorsed in blank." Ind. Code § 26-1-1-201(5), -201(20)(A).

In this case, on July 28, 1995, Cheryl and her former husband, Dennis, executed a promissory note, promising to pay M/I Financial $161,134 and 7.5% interest. Appellee's App. p. 524. This note was endorsed to Countrywide Funding on July 28, 1995. Id. at 525. That same day, Cheryl executed an amended and restated promissory note, promising to pay Countrywide Home Loans $170,396.56 at 7% interest. Id. at 526. At some point, Countrywide Home Loans executed a blank endorsement on the note allonge for $161,134. Id. at 529. The note allonge and the amended restated promissory note appear to be the same note, inasmuch as they are referenced by the same consecutive numbers. Id. at 526, 529.

Likewise, on July 28, 1995, Cheryl and Dennis executed a mortgage, securing the promissory note to M/I Financial for $161,134. Appellee's App. p. 530-35. That same day, M/I Financial assigned the mortgage to Countrywide Funding. Id. at 538. Then, on January 13, 2010, Countrywide Funding assigned the mortgage to the Bank of New York.

6

Id. at 539. Thus, the Bank of New York is now the holder of a blank endorsement on the note allonge, the amended and restated note, and has been assigned the mortgage. Accordingly, this argument fails.

Nevertheless, the Appellants argue that the mortgage should have been assigned to Bank of America before it was assigned to the Bank of New York and that the failure to do so renders the assignment from Countrywide Funding "a nullity and improper." Appellants' Br. p. 7, 10-11. The Appellants base their argument on what the Bank of New York acknowledges is "readily available public information that Bank of America purchased Countrywide Home Loans, Inc." in 2008. Appellee's Br. p. 6.

The Appellants fail to direct this Court to any designated evidence showing what type of transaction occurred when Bank of America "purchased" Countrywide Home Loans. Specifically, we do not know whether the purchase was a complete merger, purchase of assets, or some of other form of acquisition. See Sorenson v. Allied Products Corp., 706 N.E.2d 1097 (Ind. Ct. App. 1999) (discussing what distinguishes a corporate asset purchase from a de facto merger). Additionally, because of the fairly complex recordation requirements associated with mortgages, it is certainly possible that Countrywide Funding[3] did not assign this particular asset to Bank of America.[4]

---

[3] The Appellants claim that Countrywide Funding was purchased; however, the Bank of New York asserts that Countrywide Home Loans was purchased. We observe that the mortgage was assigned to Countrywide Funding. Regardless, our conclusion would be the same.

[4] The dissent points out that "it is Bank of New York's burden to show that it is the proper party to execute on the note and mortgage." Dissent op. at 3 (emphasis in original). While this point is well-

7

In any event, as discussed above, the designated evidence shows that the mortgage was first assigned from M/I Financial to Countrywide Funding on July 28, 1995. No evidence exists that the mortgage was ever sold by Countrywide Funding to Bank of America. Then, on January 13, 2010, the mortgage was assigned from Countrywide Funding to the Bank of New York. Additionally, the Bank of New York is now the holder of the amended and restated promissory note and the note allonge containing the blank endorsement from Countrywide Homes. Consequently, this argument also fails.

Finally, the Appellants argue that the Bank of New York claims that the Appellants promised to pay $179,070.62, when the note allonge states $161,134. As discussed above, the amended and restated note was for $170,396.56. Appellee's App. p. 526. While the amended complaint alleged that Cheryl executed a note promising to pay $179,070.62, id. at 99, the trial court's order determined that the amount of principal and interest due pursuant to the debt affidavit is $176,993.87. Id. at 584. However, the debt affidavit lists the net principal as $176,993.87 and the accrued interest since the default separately. Id. at 580. Consequently, we remand with instructions to the trial court to recalculate the amount to award the Bank of New York, while being cognizant of the fact that the debt affidavit lists the principal and interest separately, and the principal amount

taken, as stated above, the Indiana Code provides that the holder of a negotiable instrument may enforce it. Regarding the mortgage, in light of the fact that the mortgage was assigned to the Bank of New York and the decreasing significance of mortgage assignment and recording as recently recounted by our Supreme Court, we do not think that there exists a genuine issue of material fact solely because the mortgage was not first assigned to the Bank of America. See Citimortgage, Inc., v. Barabas, No. 48S04-1204-CC-00213, slip op. at 3-4 (Ind. Oct. 4, 2012) (giving a brief historical background of the mortgage industry including the creation of the Mortgage Electronic Registration Systems, Inc (MERS) to alleviate the inconvenience of multiple assignments and recordings after mortgages were "bundled" into shares by investment banks and sold to investors).

listed in the affidavit does not appear to be supported by any documentation in the record. Thus, we affirm and remand with instructions that the trial court recalculate the amount to award to the Bank of New York consistent with this opinion.

The judgment of the trial court is affirmed and remanded with instructions.

BRADFORD, J., concurs.

ROBB, C.J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

CHERYL E. WEBB F/K/A CHERYL E.   )
WILDER and G. CAMERON TAYLOR   )
  )
    Appellants-Respondents,   )
  )
     vs.   )     No. 49A02-1112-MF-1142
  )
THE BANK OF NEW YORK MELLON,   )
  )
    Appellee-Petitioner.   )

**ROBB, Chief Judge, dissenting**

I respectfully dissent from the majority's decision affirming the trial court's grant of summary judgment to Bank of New York.

I acknowledge the Appellants did not designate any evidence in opposition to Bank of New York's motion for summary judgment. Nonetheless, as the Appellants point out, Bank of New York's own summary judgment evidence demonstrates several genuine issues of material fact, and as the movant, Bank of New York had the initial burden of proving the absence of a genuine issue of material fact before the Appellants became obligated to respond with evidence establishing such an issue. See Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005) ("A party moving for

summary judgment bears the initial burden of showing no genuine issue of material fact . . . [i]f the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response . . . ."). It is important to point out that this decision was made pursuant to a motion for summary judgment where we must not weigh facts or decide which ones we do or do not believe.

Bank of New York's summary judgment evidence leaves a genuine issue as to the material fact of the amount Appellants owe on the note. The original note, dated July 28, 1995, was for $161,134.00 plus 7.5% interest to M/I Financial. Appellee's Appendix at 524. An Amended and Restated Note of the same date to Countrywide Home Loans was for $170,396.56 plus 7% interest. Id. at 526. Countrywide Home Loans executed a blank endorsement on the note allonge for $161,134.00. Id. at 529. An affidavit of debt signed August 13, 2010 and submitted as part of Bank of New York's Designation of Record in Support of Entry of Judgment shows the net principal balance as of July 9, 2010, as $176,993.87 plus interest. Id. at 580. And the complaint and amended complaint for foreclosure state that the principal amount is $179,070.62. Id. at 4, 99. No explanation is given for the varying amounts of principal shown on the documents designated in support of summary judgment. At the very least, there is a genuine issue regarding the material fact of the amount of the debt. The majority acknowledges these discrepancies, and remands to the trial court to recalculate the award to Bank of New York. This is not an appropriate remedy on summary judgment, as it requires a factual determination of which

11

figure, if any, is the right figure. "[S]ummary judgment should not be granted when it is necessary to weigh the evidence." Konrad Motor and Welder Serv., Inc. v. Magnetech Indus. Servs., Inc., 973 N.E.2d 1158, 1162 (Ind. Ct. App. 2012) (quotation omitted). Becauase the designated materials do not provide a clear and unequivocal answer to the question of the amount of the debt, I believe summary judgment is inappropriate.

Moreover, the Appellants executed the original promissory note and mortgage to M/I Financial and on the same day, M/I Financial endorsed the note and assigned the mortgage to Countrywide Funding. On January 13, 2010, Countrywide Funding assigned the mortgage to Bank of New York. See id. at 374. As the Appellants point out, and as Bank of New York acknowledges in its brief, Bank of America purchased Countrywide in 2008. See slip op. at 7. The majority states that the "Appellants fail to direct this Court to any designated evidence showing what type of transaction occurred when Bank of America 'purchased' Countrywide Home Loans [and] [n]o evidence exists that the mortgage was ever sold by Countrywide Funding to Bank of America." Id. at 7-8. However, it is Bank of New York's burden to show that it is the proper party to execute on the note and mortgage. The record does not contain an explanation of the relationship between Countrywide Funding and Countrywide Home Loans, and the parties disagree as to which entity was purchased by Bank of America. See slip op. at 7, n.3. Moreover, the record is silent as to what assets and/or liabilities Bank of America purchased from said entity.

12

The majority cites <u>Citimortgage, Inc. v. </u>Barabas, slip op. at 8 n.4, to support the proposition that the Bank of America transaction is not a material fact. The use of Mortgage Electronic Registration Systems, Inc. ("MERS") may "alleviate the inconvenience of multiple assignments and recordings" for investment banks, see <u>id.</u>, but the banks at issue here were not using MERS as nominee for these instruments. Given the Appellants' raising the issue of Countrywide's sale in 2008 and Bank of New York's acknowledgement of the same as "readily available public information," Appellee's Brief at 6, I believe there is at least a genuine issue of material fact as to whether Countrywide Funding could have and should have assigned a mortgage to Bank of New York two years after the Bank of America transaction, and therefore, a genuine issue of material fact as to how Bank of New York came to have the note and mortgage in 2010. That multiple assignments require multiple recordings at "considerable inconvenience and expense," <u>Citimortgage, Inc.</u>, slip op. at *1, does not excuse the failure to do so if required.

It may well be that in the end, Bank of New York is entitled to a judgment of foreclosure. However, based on what I believe to be genuine issues of material fact raised by the Appellants on the basis of Bank of New York's designated materials, I do not believe Bank of New York is entitled to summary judgment as a matter of law and I would reverse the trial court's entry of judgment in Bank of New York's favor.[5]

---

[5] The trial court also denied the Appellants' motion for summary judgment. As the Appellants designated no evidence in support of their motion and therefore did not meet their burden as to their own motion, I agree that the trial court properly denied summary judgment to the Appellants.