FILED

Mar 02 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

James A. Masters
Nemeth, Feeney, Masters & Campiti,
P.C.
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Kevin E. Warren
Benjamin M. Redgrave
South Bend, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| New Nello Operating Co., LLC,<br>*Appellant-Defendant,*<br><br>v.<br><br>CompressAir,<br>*Appellee-Plaintiff.* | March 2, 2020<br><br>Court of Appeals Case No.<br>19A-CC-603<br><br>Appeal from the St. Joseph Circuit<br>Court<br><br>The Honorable John E. Broden,<br>Judge<br><br>Trial Court Cause No.<br>71C01-1703-CC-826 |

**Mathias, Judge.**

[1]     CompressAir obtained a judgment of $44,689.66 against Nello, Inc., a
corporation the parties now refer to as "Old Nello." Upon learning that Old
Nello's business was continuing under the corporate entity of New Nello
Operating Co., LLC ("New Nello"), CompressAir filed proceedings

supplemental naming New Nello as a garnishee-defendant. In the proceedings supplemental, New Nello argued that it was not liable for the judgment entered against Old Nello. The trial court disagreed, finding that there had been a de facto merger of Old Nello and New Nello and that the latter was a mere continuation of the former. The trial court therefore entered judgment against New Nello in the amount of $44,689.66. New Nello appeals and claims that there was no de facto merger between Old Nello and New Nello and that the latter is not a mere continuation of the former. Concluding that the trial court did not clearly err in concluding that there had been a de facto merger, we affirm.

## Facts and Procedural History

[2] The facts underlying this case are essentially undisputed. Old Nello was founded in 2002 by Dan Ianello ("Ianello") and was in the business of manufacturing utility and cellular telephone towers. Old Nello's officers were: Ianello, president; Jason Lambert ("Lambert"), Vice President of Engineering; Robert Rumpler ("Rumpler"), Vice President of Manufacturing; and Kevin Brisson ("Brisson"), Chief Financial Officer. These officers also owned approximately 95–99% of the shares of Old Nello.

[3] In the summer of 2016, Old Nello consolidated its facilities in Bremen, Indiana and Ft. Worth, Texas, and its administrative offices in downtown South Bend to a new building on Sheridan Street in South Bend. The consolidation took longer, and cost more, than anticipated. This caused the company fiscal

difficulties, and by the latter half of 2016, Old Nello was in dire financial straits; it had few liquid assets and was deeply in debt. Specifically, Old Nello had taken out a $10 million secured loan with Fifth Third Bank, a $3.4 million loan with a secondary secured creditor, Live Oak Capital ("Live Oak), and a $1.4 million debt obligation to the City of South Bend's Industrial Revolving Loan Fund. The officers of Old Nello each executed personal loan guarantees in connection with the Fifth Third loan. On November 10, 2016, Fifth Third Bank sent a demand letter to Old Nello and Ianello personally, declaring that its notes were due and payable immediately.

[4] Concerned that it would lose its investment in Old Nello, Live Oak contacted Michael Clevy ("Clevy"), of the private equity firm Beckner Clevy Partners, to see if there was a way to continue Old Nello's business. Clevy explored several options, including continuing Old Nello and paying its way out of debt, having other investors put money into Old Nello, refinancing Old Nello's debt with another lender, or asking other private individuals in the industry to invest in or purchase Old Nello. None of these options came to fruition, and Fifth Third was ready to foreclose upon its note and liquidate Old Nello's assets.

[5] In early 2016, CompressAir had installed thousands of feet of compressed air and oxygen piping within Old Nello's South Bend facility. The cost of the work exceeded $87,000, and by the spring of 2017, approximately $39,000 remained unpaid to CompressAir. CompressAir's controller attempted to work out a payment agreement with Old Nello but was unsuccessful. Accordingly, in

March 2017, CompressAir filed suit against Old Nello seeking to recover the unpaid $39,000. By that summer, six other creditors had filed complaints seeking payment for outstanding bills.

[6] In April or May of 2017, Clevy created New Nello Acquisition Co., to purchase Fifth Third's note. Clevy bought Fifth Third's $10 million note for $3.765 million, which was more than Clevy's $3.1 million estimate of Old Nello's liquidation value. New Nello Acquisition Co. then formed New Nello Operating Co. as a wholly-owned subsidiary. On November 14, 2017, New Nello Acquisition Co. and New Nello Operating Co. entered into a strict foreclosure agreement with Old Nello. Thereafter, New Nello conducted the same business as Old Nello, i.e., building utility and cellular towers, operated from the same physical location as Old Nello, and retained approximately ninety percent of Old Nello's employees, including its officers, Ianello, Lambert, Brisson, and Rumpler. These officers, however, had no ownership interest in New Nello.[1] There was no public announcement of New Nello's assumption of Old Nello's business to either the general public or the employees, for fear of marketplace upheaval. New Nello also operated under the name "Nello." New Nello also used the same website as Old Nello and held itself out as the same company by claiming to have been founded in 2002.

---

[1] The chief investors in New Nello are "Third Article Trust," and "the Bancoff Family." Tr. p. 42.

[7]     After its acquisition of Old Nello's assets and business, New Nello negotiated with Old Nello's vendors and creditors that it deemed were essential to the operation of the business and paid them. Included among the essential creditors were Ianello, Lambert, Brisson, and Rumpler; New Nello paid all obligations owed to them and released them from the personal guarantees they executed in favor of the note New Nello purchased from Fifth Third.[2] Other creditors of Old Nello, were listed as "unassumed liabilities" in the strict foreclosure agreement. Appellant's App. p. 67. In October 2017, Brisson continued to negotiate with CompressAir to come up with a payment plan. Even though Old Nello's business had been assumed by New Nello by that time, Brisson never informed CompressAir of the transaction.

[8]     On December 1, 2017, the trial court granted summary judgment in favor of CompressAir in its complaint against Old Nello and entered judgment in the amount of $44,689.66. CompressAir did not learn about New Nello until after it obtained judgment against the now-defunct Old Nello. On February 26, 2018, CompressAir filed proceedings supplemental naming New Nello as a garnishee-defendant. CompressAir filed a second motion for proceedings supplemental on July 6, 2018, asking the trial court to enter judgment against New Nello as the successor to Old Nello. The trial court held an evidentiary hearing on the issue

---

[2] Specifically, New Nello paid Ianello $5,496.57, Lambert $936.25, Brisson $13,293.08, and Rumpler $5,583.08. Appellant's App. pp. 136–40.

on November 29, 2018. At the hearing, Clevy testified that New Nello chose to pay only those creditors of Old Nello that were essential to running New Nello.

[9] On February 13, 2019, the trial court entered findings of fact and conclusions of law determining that New Nello is a mere continuation of Old Nello and that there was a de facto merger of the companies. The trial court noted that New Nello runs the same business with the same name, the same employees, and from the same location as Old Nello. The court also noted that Old Nello's former shareholders retained management roles in New Nello. The court entered judgment against New Nello in the full amount owed to CompressAir by Old Nello: $44,689.66. New Nello now appeals.

## Standard of Review

[10] Our standard of review in cases where the trial court enters findings of fact and conclusions of law was set forth by this court in *Koch Development Corp. v. Koch* as follows:

> When a trial court enters findings and conclusions, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings; we then determine whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, and we consider only the evidence favorable to the trial court's judgment. We also will not reassess witness credibility. The party appealing the trial court's judgment must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review

of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, which are evaluated *de novo*.

996 N.E.2d 358, 369 (Ind. Ct. App. 2013) (citations and internal quotation marks omitted), *trans. denied*.[3]

# Discussion and Decision

[11] It has long been held that when one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller. *Ziese & Sons Excavating, Inc. v. Boyer Const. Corp.*, 965 N.E.2d 713, 722 (Ind. Ct. App. 2012) (citing *Sorenson v. Allied Prods. Corp.*, 706 N.E.2d 1097, 1099 (Ind. Ct. App. 1999)); *see also Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1233 (Ind. 1994) (citing *Markham v. Prutsman Mirror Co.*, 565 N.E.2d 385, 387 (Ind. Ct. App. 1991)). There are, however, four general exceptions to this rule against successor liability:

(1) an implied or express agreement to assume liabilities; (2) a fraudulent sale of assets done for the purpose of evading liability;

---

[3] CompressAir argues that we should apply a general judgment standard of review, citing *Allstate Insurance Co. v. Kepchar*, 592 N.E.2d 694 (Ind. Ct. App. 1992), *trans. denied*. In *Kepchar*, we noted that "findings of fact [are] improper in proceedings supplemental." *Id*. at 696 (citing *In re Marriage of Hudak*, 428 N.E.2d 1333, 1335 (Ind. Ct. App. 1981)). The *Kepchar* court thus held that there was no error where the trial court denied a request for findings and conclusions in proceedings supplemental. *Id*. But the *Kepchar* court did not hold that the entry of findings and conclusions in proceedings supplemental was prohibited. And in the case cited by *Kepchar*, the court merely noted the rule that specific findings and conclusions are not *required* in proceedings supplemental. *Hudak*, 428 N.E.2d at 1335 (citing *Hutchinson v. Trauerman*, 112 Ind. 21, 25–26, 13 N.E. 412, 414 (1887)). We therefore cannot say that the trial court erred by entering specific findings and conclusions, even though it was not required to do so. Moreover, CompressAir would prevail under either standard.

(3) a purchase that is a de facto consolidation or merger; or (4) where the purchaser is a mere continuation of the seller. Successor liability is implicated only when the predecessor corporation no longer exists, such as in the case of dissolution or liquidation in bankruptcy.

*Ziese*, 965 N.E.2d at 722 (citing *Sorenson*, 706 N.E.2d at 1099); *see also Winkler*, 638 N.E.2d at 1233.

[12]  The trial court here determined that the third and fourth exceptions applied, i.e., that New Nello's purchase of Old Nello's business assets was a de facto merger, and that New Nello is a mere continuation of Old Nello. New Nello contends that the trial court erred on both accounts.

[13]  As stated by our supreme court in *Cooper Industries, LLC v. City of South Bend*, 899 N.E.2d 1274, 1288 (Ind. 2009), "[c]ourts sometimes treat asset transfers as *de facto* mergers where the economic effect of the transaction makes it a merger in all but name." Factors supporting a finding of a de facto merger include:

(1) continuity of ownership; (2) continuity of management, personnel, and physical operation; (3) cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; and (4) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor.

*Sorenson*, 706 N.E.2d at 1100 (quoting *Hernandez v. Johnson Press Corp.*, 388 N.E.2d 778, 780 (Ill. App. Ct. 1979)); *see also Cooper Indust.*, 899 N.E.2d at 1288 (listing pertinent findings that support a de facto merger as "continuity of the

predecessor corporation's business enterprise as to management, location, and business lines; prompt liquidation of the seller corporation; and assumption of the debts of the seller necessary to the ongoing operation of the business.") (citations omitted).

[14] The facts of the present case clearly support a finding of a de facto merger. New Nello continued Old Nello's business enterprise as to management, location, and area of business. New Nello continued to refer to itself as "Nello," and its website stated that it was founded in 2002, the year Old Nello was founded. Moreover, New Nello assumed the debts of Old Nello that it deemed necessary to continue the business. All of these factors support a finding of a de facto merger.

[15] Even though there was no continuity of ownership, we do not consider this to be fatal to a finding of a de facto merger. *See Lippens v. Winkler Backereitechnik GmbH*, 31 N.Y.S.3d 340, 343 (N.Y. App. Div. 2016) ("while factors such as shareholder and management continuity will be evidence that a de facto merger has occurred . . . those factors alone should not be determinative[.]"); *Gallenberg Equip., Inc. v. Agromac Int'l, Inc.*, 10 F. Supp. 2d 1050, 1055 (E.D. Wis. 1998) (noting that "courts have imposed successor liability without requiring continuity of corporate ownership."), *aff'd*, 191 F.3d 456 (7th Cir. 1999). And even though there was no continuity of ownership in the present case, there was continuity of management, as the entire management team from Old Nello continues in the same roles in New Nello. *Cf. Sorenson*, 706 N.E.2d at 1100

(upholding finding that there was no de facto merger where the shareholders of the old corporation "never possessed the authority to participate fully in the management function" of the new corporation).

[16] And although Old Nello was apparently never officially dissolved, all of its assets were acquired by New Nello. Old Nello is therefore a defunct corporation, even if not legally dissolved. *Knapp v. N. Am. Rockwell Corp.*, 506 F.2d 361, 367 (3d Cir. 1974) (holding that sale of old corporation's assets to new corporation was a de facto merger even though the old corporation continued its existence for eighteen months after the exchange). Nor do we find significant that Old Nello is still liable for the Fifth Third note bought by New Nello; Clevy testified that New Nello did not expect the Fifth Third note to be paid. Tr. p. 46. For purposes of successor liability, Old Nello effectively no longer exists; it has no assets, having sold them to New Nello. Old Nello continues as an entity in name only. *See Chicago, I. & S.R. Co. v. Taylor*, 183 Ind. 240, 108 N.E. 1, 3 (1915) ("[A] corporation which takes, as owner, all the property and assets of another corporation, which thus practically ceases to exist except as a paper organization, is liable in equity for the obligations of the old company, at least to the amount of the assets converted.") (citations omitted).

Viewing the facts in favor of the trial court's judgment, we are unable to say that the trial court clearly erred in concluding that there was a de facto merger between Old Nello and New Nello.[4]

## Conclusion

The trial court did not clearly err in determining that there was a de facto merger between Old Nello and New Nello. The de facto merger exception to the general rule that a corporation that purchases the assets of another corporation does not assume the liabilities of the former corporation therefore applies, and the trial court properly found that New Nello is liable for the $44,689.66 judgment obtained by CompressAir against Old Nello. Accordingly, we affirm the judgment of the trial court.

Affirmed.

Kirsch, J., and Bailey, J., concur.

---

[4] Because we conclude that the trial court did not err in determining that there was a de facto merger between Old Nello and New Nello, we need not address New Nello's second argument that the trial court clearly erred in concluding that New Nello was merely a continuation of Old Nello. That is, because the "merger" exception applies, there is no reason to address whether the "continuation" exception also applies.